UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

ROBERT REED,                                          Case No. 12-CV-1948 (PJS/JSM)

          Plaintiff,

v.                                                                                  ORDER

CHRIS WALLACE,

          Defendant.

---

    Duane A. Kennedy, KENNEDY LAW OFFICE, for plaintiff.

    Jenny Gassman-Pines and John M. Baker, GREENE ESPEL PLLP, for defendant.

    Defendant Chris Wallace, an Olmsted County deputy sheriff, used a police dog to find and detain plaintiff Robert Reed after Reed fled into dense woods to avoid being apprehended for burglarizing a nearby home.  Reed alleges that Wallace's use of the police dog violated Reed's right under the Fourth Amendment to be free from excessive force.  This matter is before the Court on Wallace's motion for summary judgment.  ECF No. 23.  Wallace's motion is granted for the reasons explained below.

I.  BACKGROUND

    The facts of this case are disputed in some respects, but, taking the record in the light most favorable to Reed, a jury could find the following:

    The Olmsted County Sheriff's Office received a call reporting a burglary in progress during the early morning hours of November 10, 2009.  The caller reported that two individuals had broken into her home and that she had witnessed them looking through her papers.  *See* ECF No. 26-1 at 2. Wallace and other officers were dispatched to the scene, but the burglars fled

before the officers arrived. *Id*. Wallace and the other officers immediately began searching for the burglars in the rural area surrounding the residence.

The officers quickly came upon an unattended vehicle parked about a quarter mile from the residence. *See* ECF No. 27-1 at 2; ECF No. 28-1 at 2. A records search connected the vehicle to Edward Kearns, a suspect in other recent Olmsted County burglaries. *See* ECF No. 27-1 at 2. Although the weather was cold, the vehicle's engine was warm, suggesting that the vehicle had been driven recently. *Id*.

The vehicle was parked near a heavily wooded area. Wallace suspected that one (or both) of the burglars might be hiding in the woods, so he released a police dog to search for the suspects. Before releasing the dog, however, Wallace gave the following warning: "This is the Olmsted County Sheriff's Office. You are under arrest. Respond to the sound of my voice or I will release my dog and you will get bit." Wallace Aff. ¶ 16 [ECF No. 26]. Hearing no response, Wallace announced, "This is your final warning before I release my dog. Respond to the sound of my voice or you will get bit." *Id*. Again, Wallace heard no response. Wallace released his dog to search the woods. *Id*. ¶ 17.

Wallace's suspicion that someone connected to the burglary was hiding in the woods was well founded. Reed testified that he and Kearns had spent the evening in a hotel room smoking methamphetamine and marijuana. Reed Dep. 17-19 [ECF No. 30-1 at 2-29]. As night turned into morning, the men ran out of drugs, so they drove to another location to purchase more. *Id*. at 19-20. The men stayed at the new location for a while, consumed more methamphetamine, then returned to Kearns's car. *Id*. at 20-21. Needing money to purchase yet more drugs, the two men drove to what Kearns said was his parents' business — which, in fact, was the rural


residence to which the police were later called. *Id*. at 23. Kearns parked the car a short distance from the residence and walked down the road towards it, while Reed stayed near the vehicle and smoked a cigarette. *Id*. at 22. About 20 to 40 minutes later — Reed could not remember exactly how long, because he "was really speeded up" and not wearing a watch, *id*. at 23 — Kearns came back up the road towards Reed and handed him burglary tools and a bag containing money. *Id*. at 22-24. As the handoff occurred, the two men saw flashlights shining in the distance. *Id*. at 22. Believing (correctly) that the police had arrived, Kearns and Reed fled. *Id*. at 28. Reed quickly lost sight of the speedier Kearns, and, unsure of Kearns's whereabouts, Reed decided to hide in the nearby woods. *Id*. at 29.

As he hid in some underbrush, Reed remembered that there was a small bag containing approximately three grams of methamphetamine in his pocket. *Id*. Reed did not want to be discovered by police with illegal drugs in his possession, so Reed swallowed all of the methamphetamine, going so far as to lick the bag clean of any residue. *Id*. at 29, 32. Reed later testified that after swallowing the methamphetamine, "[e]verything went black. . . . I don't even think I could think anymore." *Id*. at 34. Because he had blacked out, Reed did not hear Wallace's warnings that a police dog would be released into the woods if no response was given. (And, because he blacked out, Reed cannot testify about what happened after he swallowed the methamphetamine.)

In the meantime, Wallace lost sight of his dog. *See* Wallace Aff. ¶ 18. Under the policies of the Olmsted County Sheriff's Office, a police dog is not "permitted to roam at will" and must remain "under [the] direct supervision of the handler at all times," except when secured in a kennel or similar area. ECF No. 33 at 11. Wallace therefore called for the dog to return to him.

*See* Wallace Aff. ¶ 18. After calling for the dog, however, Wallace heard a voice screaming from the woods. *Id*. The voice was Reed's; although Reed did not realize it due to the effects of the drugs that he had ingested, the police dog had discovered him and had been biting him. Reed Dep. 34-35.

The officers entered the woods upon hearing the screams, and the dog returned to Wallace. Wallace Aff. ¶ 20. Because the officers could not identify from where the screams had come, Wallace released the dog once more to locate the suspect.[1] Wallace Aff. ¶ 22. The dog again found Reed and bit him, causing Reed to scream. *Id*. ¶ 23; Reed Dep. 35-36. Reed's screams led the officers to him, and Reed was arrested on suspicion of burglary.[2]

Although they did not know that Reed had swallowed three grams of methamphetamine, the officers realized that something was wrong with him, as he was convulsing and having difficulty breathing. *See* ECF No. 27-1 at 3. Reed was immediately transported to a nearby emergency room. While treating Reed for the drug overdose, doctors also cleaned and bandaged dog-bite wounds on his buttocks and arm, and they recommended that he take ibuprofen as needed for any pain. *See* Baker Aff. Ex. G at 1-5 [ECF No. 30-1]; Reed Dep. 50. Later, doctors also prescribed antibiotics for the wounds. Reed Dep. 52-53. Reed's wounds are described in his medical records as "[s]uperficial," "scabbed over," and "partial thickness in nature." Baker Aff. Ex. G at 1-5.

---

[1]The parties dispute whether Wallace gave an additional warning before the dog was released the second time. Wallace asserts that he did, *see* Wallace Aff. ¶ 21, and Reed does not know, because he was in a drug-induced blackout. Reed notes, however, that police reports do not mention an additional warning. *See* ECF No. 32 at 3.

[2]Reed later pleaded guilty to possession of burglary tools, and the state dropped burglary and drug-possession charges. *See* ECF No. 30-1 at 33-34.

Reed brings this action seeking to recover damages pursuant to 42 U.S.C. § 1983.[3] According to Reed, Wallace's use of a police dog to apprehend him, along with the manner in which he used that dog, amounted to excessive force in violation of the Fourth Amendment. Reed further alleges that he has suffered physical pain, scarring, and emotional trauma because of Wallace's use of excessive force. Compl. ¶ 36 [ECF No. 1]. Wallace now moves for summary judgment, arguing that he is entitled to qualified immunity because his use of the police dog was objectively reasonable and because Reed suffered only de minimis injuries.

## II. ANALYSIS

### A. Standard of Review

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute over a fact is "material" only if its resolution might affect the outcome of the lawsuit under the substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. at 255.

---

[3] Although Reed mentions in the complaint that this action is also brought "under the common law of the State of Minnesota," Compl. ¶ 1 [ECF No. 1], he confirmed at the hearing on the summary-judgment motion that he is not raising any state-law claims against Wallace.

B. *Excessive Force*

1. Objective Reasonableness of Seizure

The Fourth Amendment prohibits unreasonable seizures. U.S. Const. amend. IV. The right to be free from an unreasonable seizure includes the right to be free from excessive force used to effect a seizure. *See Andrews v. Fuoss*, 417 F.3d 813, 818 (8th Cir. 2005). "Determining whether the force used to effect a particular seizure is reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (quotations omitted). Among the factors to be considered are "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id*. "The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id*. (quotation omitted).

Applying these principles, the Court concludes that Wallace's use of a police dog was objectively reasonable under the circumstances. Officers were searching for two men suspected of having committed a burglary, an inherently dangerous felony. *Cf*. U.S.S.G. § 4B1.2(a) (stating that "burglary of a dwelling" is a "crime of violence" for purposes of the Sentencing Guidelines). Wallace believed — and was correct to believe — that one or both of the burglary suspects might be hiding in an area later described by Reed as "heavily wooded," "really thick," "jagged," and "very secluded." Reed Dep. 29, 31. The sun had not yet risen, and visibility was minimal. Wallace's options at that point were (1) to let the suspects escape; (2) to blindly enter the woods

himself and risk being ambushed; or (3) to use his police dog to find and detain the suspects. Under the circumstances, it was eminently reasonable for Wallace to decide on the last option.

The manner in which Wallace used his police dog to apprehend Reed was also objectively reasonable. The undisputed evidence in the record demonstrates that Wallace announced twice that he would be releasing the dog before doing so, thus giving anyone lurking in the woods an opportunity to surrender. Notwithstanding Reed's allegations to the contrary in the complaint, there is no evidence in the record that the officers deliberately or unnecessarily prolonged Reed's encounter with the dog. And not until the officers found Reed did they realize (or could they have realized) that he did not pose a danger to them because of his drug-induced blackout.

Because Wallace's decision to use the police dog and the manner in which he deployed the police dog were both objectively reasonable, Wallace is entitled to summary judgment on Reed's claim of excessive force.

2.  De Minimis Injury

Reed's claim fails for a second reason. Even if Wallace's actions were not objectively reasonable, Wallace is nevertheless entitled to qualified immunity under *Chambers v. Pennycook* because Reed suffered only de minimis injuries. 641 F.3d 898 (8th Cir. 2011). In *Chambers*, the Eighth Circuit held that a plaintiff need not show more than de minimis injuries in order to prevail on a claim of excessive force. *Id*. at 906-08. But because the Eighth Circuit's previous case law had not been clear on this point, the police officers who had been sued in *Chambers* — and who had inflicted only de minimis injuries on the plaintiff — were found to be entitled to qualified immunity. *Id*. at 908-09. Wallace argues that, because the arrest in this case took place

before *Chambers* was decided, and because the dog inflicted only de minimis injuries on Reed, he too is entitled to qualified immunity. The Court agrees.

This case is squarely controlled by *Chambers*. As Reed conceded at the hearing on the summary-judgment motion, Wallace undoubtedly had the right to detain him on the suspicion that he was involved in the nearby burglary. Because Wallace had the right to detain Reed, he necessarily had the right to use some degree of force against Reed. *Graham*, 490 U.S. at 396 ("[T]he right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it."). This sets Reed's case apart from cases in which, under the plaintiff's version of the facts, the officer did not have the right to make an arrest or otherwise detain the plaintiff. *Cf. Nguyen v. Lokke*, No. 11-CV-3225, 2013 WL 4747459, at *3 (D. Minn. Sept. 4, 2013) ("When there is no right to seize a citizen — that is, when there is no right to detain a citizen even momentarily — then there is also no right to use force against that citizen."); *Smith v. Appledorn*, No. 11-CV-2966, 2013 WL 451320, at *3 (D. Minn. Feb. 6, 2013) ("[B]efore a police officer can use physical force, the arrest or investigatory stop itself must be justified.").

Because Reed's injuries were de minimis, *Chambers* dictates that Wallace is entitled to qualified immunity, even if he acted unreasonably. As noted above, the medical reports from the night of the arrest describe Reed's dog-bite wounds as "[s]uperficial," "scabbed over," and "partial thickness in nature." Baker Aff. Ex. G at 1-5. Photographs of Reed's wounds taken shortly after his arrest confirm this assessment. *See* Maitland Aff. Ex. D [ECF No. 29]. No treatment was necessary beyond cleaning, bandaging, and applying antibiotics to the wounds — the type of "treatment" that a parent would provide to a child who scraped an elbow. Baker Aff.

Ex. G at 1-5; Reed Dep. 45-54. Reed confirms that, although some scarring persists, he does not suffer any continuing physical pain as a result of the dog-bite wounds. *Id*. at 56. And although Reed was hospitalized following the arrest, that hospitalization was occasioned by Reed's drug overdose, not by the dog bites. Under these facts, Reed's injuries must be considered de minimis. *See LaCross v. City of Duluth*, 713 F.3d 1155, 1157-58 (8th Cir. 2013) (episodes of anxiety resulting from use of Taser are de minimis injury); *Wertish v. Krueger*, 433 F.3d 1062, 1067 (8th Cir. 2006) ("relatively minor scrapes and bruises and the less-than-permanent aggravation of a prior shoulder condition were de minimis injuries . . . ."); *Smith v. Buck*, No. 12-CV-0163, 2013 WL 1658397, at *1 (D. Minn. Apr. 17, 2013) (adopting Report and Recommendation finding that similar wounds from a dog bite resulted only in de minimis injury).

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1. Defendant Chris Wallace's motion for summary judgment [ECF No. 23] is GRANTED.

2. The complaint [ECF No. 1] is DISMISSED WITH PREJUDICE AND ON THE MERITS.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: December 12, 2013      s/Patrick J. Schiltz
                                                Patrick J. Schiltz
                                                United States District Judge